## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BRANDI ROSS, OBO
K.R., MINOR,
     Plaintiff,

Case No. 1:16-cv-739

Black, J.

Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**REPORT AND
RECOMMENDATION**

    Plaintiff Brandi Ross, on behalf of her minor child, K.R., brings this action pursuant to 42

U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying plaintiff's application for children's Supplemental Security Income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the

Commissioner's response in opposition (Doc. 15), and plaintiff's reply (Doc. 16).

## I. Procedural Background

    K.R. was born in 2003 and was 11 years old at the time of the administrative law judge

(ALJ)'s decision. Plaintiff filed an application for children's SSI benefits on K.R.'s behalf in

June 2012, alleging disability due to hypertension, "ODD" (oppositional defiant disorder), mood

disorder, comprehension problems, "dbd" (disruptive behavior disorder), foot pain, retractile

testis, nocturnal enuresis, behavior concerns, scoliosis, meatal stenosis, sleep concerns, flexible

pes valgus with calcaneovalgus, and insertional "PT" (posterial tibial) tendonitis. (Tr. 303).

Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested and was

granted a *de novo* hearing before ALJ Billy Thomas. A non-attorney representative appeared at

the ALJ hearing with plaintiff, her husband, and K.R., all of whom testified at the hearing held

on January 8, 2015.  On March 17, 2015, the ALJ issued a decision granting in part and denying

in part plaintiff's SSI application.  The ALJ found that K.R. was disabled and entitled to SSI

benefits for a closed period from June 28, 2012 through October 18, 2014, but not thereafter.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ

the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, the claimant must file an application and be an "eligible individual" as

defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  Eligibility is dependent upon

disability, income, and other financial resources.  *Id.*; 20 C.F.R. § 416.202.  An individual under

the age of 18 is considered disabled for purposes of SSI "if that individual has a medically

determinable physical or mental impairment, which results in marked and severe functional

limitations, and which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining

whether a child is disabled for purposes of children's SSI benefits:

1.  Is the child engaged in any substantial gainful activity?  If so, benefits are denied.

2.  Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.

3.  Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P, 20 C.F.R. § 416.924(a)?  If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).

2

If an impairment does not meet a listed impairment, disability may nonetheless be established if the child's impairment is medically or functionally equivalent to a listed impairment. A child's impairment is "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria" of a listed impairment. 20 C.F.R. § 416.926. In determining whether a child's impairment(s) functionally equals the listings, the adjudicator must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal an impairment in the listings, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The relevant factors that will be considered in making this evaluation are (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effects of the child's medications or other treatment. 20 C.F.R. § 416.926a(a)(1)-(3).

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than

3

extreme." *Id.* An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). Day-to-day functioning may be "very seriously limited" when only one activity is limited by the impairment or when several activities are limited by the impairment's cumulative effects. *Id.*

If the child's impairment meets, medically equals, or functionally equals an impairment in the listings, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

### B. The ALJ's findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [K.R.] was born [in] . . . 2003. Therefore, he was a school-age child on June 28, 2012, the date the application for supplemental security income was filed (20 CFR 416.926a(g)(2)).
>
> 2. [K.R.] has not engaged in substantial gainful activity since June 28, 2012, the date [he] became disabled (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 3. From June 28, 2012 through October 18, 2014, the period during which [K.R.] was under a disability, [K.R.] had the following severe impairments: attention deficit hyperactivity disorder, generalized anxiety disorder, behavior disorder, Tourette's disorder, mood disorder, and oppositional defiant disorder (20 CFR 416.924(c)).
>
> 4. From June 28, 2012 through October 18, 2014, [K.R.] did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. From June 28, 2012 through October 18, 2014, the period during which [K.R.] was disabled, the severity of [K.R.]'s impairments functionally equaled the listings (20 CFR 416.924(d) and 416.926a).[1]

6. [K.R.] was under a disability, as defined by the Social Security Act, from June 28, 2012 through October 18, 2014 (20 CFR 416.924(a)).

7. [K.R.] has not developed any new impairment or impairments since October 19, 2014, the date [his] disability ended. Thus, [K.R.]'s current severe impairments are the same as those present from June 28, 2012 through October 18, 2014.

8. Medical improvement occurred as of October 19, 2014, the date [K.R.]'s disability ended (20 CFR 416.994a(c)).[2]

9. Since October 19, 2014, [K.R.] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

10. On October 19, 2014, [K.R.] was a school-age child and is currently a school-age child (20 CFR 416.926a(g)(2)).

11. Since October 19, 2014, [K.R.] has not had an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.994a(b)(2) and 419.926a[3] and SSR 05-03p).

12. [K.R.]'s disability ended October 19, 2014 (20 CFR 416.994(b)(3)(iii)).

(Tr. 23-36).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

---

[1] The ALJ found that for this period, K.R.'s impairments caused a marked limitation in the categories of acquiring and using information, attending and completing tasks, and interacting and relating to others and less than marked limitation in the categories of moving about and manipulating objects, caring for personal needs, and health and physical well-being. (Tr. 24).

[2] The ALJ found that as of October 19, 2014, K.R.'s impairments caused a marked limitation in the category of attending and completing tasks and less than marked limitation in the categories of acquiring and using information, interacting and relating to others, moving about and manipulating objects, caring for personal needs, and health and physical well-being. (Tr. 31-36).

[3] It appears the citation to § 419.926a is a typographical error and that the ALJ intended to cite to 20 C.F.R. § 416.926a.

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers v. Comm'r. Soc. Sec. Admin.*, 582 F.3d 647 (6th Cir.

2009) (quoting *Bowen*, 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported

by substantial evidence where ALJ failed to give good reasons for not giving weight to treating

physician's opinion, thereby violating the agency's own regulations).

**D. Medical improvement**

"In order to find a closed period of disability, the Secretary must find that at some point in

the past, the claimant was disabled and that, at some later point in the past, he improved to the

6

point of no longer being disabled." *Gillespie v. Comm'r. of Soc. Sec.*, No. 09-11191, 2010 WL 4063713, at *3 (E.D. Mich. Oct. 14, 2010) (citing *Long v. Sec'y of Health & Human Servcs.*, No. 93-2321, 1994 WL 718540, at *2 (6th Cir. Dec. 27, 1994)). If an ALJ has found a claimant disabled for a closed period, the ALJ must find a medical improvement in the claimant's condition to end his benefits. *Niemasz v. Barnhart,* 155 F. App'x 836, 839-40 (6th Cir. 2005). *See also Cobb v. Comm'r of Soc. Sec.,* No. 1:09cv51, 2010 WL 565260, at *8 (W.D. Mich. Feb.11, 2010) (citing *Shepherd v. Apfel,* 184 F.3d 1196, 1200 (10th Cir. 1999) (medical improvement standard as set forth in 20 C.F.R. § 416.994[4] applies to closed period cases); *Long,* 1994 WL 718540, at *2; *Jones v. Shalala,* 10 F.3d 522, 524 (7th Cir. 1993)). The regulations define "medical improvement" as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable decision that [the claimant was] disabled. . . ." 20 C.F.R. § 416.994a(c). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs or laboratory findings associated with your impairment(s)[.]" 20 C.F.R. § 416.994a(c). There must be "substantial evidence" of "medical improvement" and proof that the claimant is no longer disabled to satisfy the medical improvement standard. *Niemasz,* 155 F. App'x at 840 (citing 42 U.S.C. § 423(f)(1)). If the Commissioner's findings on the issue of medical improvement are supported by substantial evidence, the Commissioner's decision must be affirmed. *Gillespie*, 2010 WL 4063713, at *3 (citing 42 U.S.C. § 405(g)).

---

[4] 20 C.F.R. § 416.994 govern the determination of whether an adult's disability continues or ends. The medical improvement standard for adults and children in §§ 416.994 and 446.994a is identical.

### E. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ's decision that K.R.'s disability ended on October 19, 2014 was not based on substantial evidence; (2) the ALJ did not properly weigh the opinion of K.R.'s treating physician, Dr. V. Wade Weatherington, M.D.; (3) the ALJ erred in finding that K.R. has "less than marked" limitation in the domain of "Caring for Self" because the medical and school records support a finding of at least "marked" limitation in this domain; and (4) the ALJ erred in finding that K.R.'s impairments do not meet Listing 112.11 for ADHD. (Doc. 10). Because plaintiff's allegations of error overlap to a large extent, the Court will consider them together where appropriate.

**1. Whether the ALJ's finding that K.R.'s disability ended is substantially supported and whether the ALJ properly weighed Dr. Weatherington's opinion**

The ALJ found that treatment records documented improvement in K.R.'s condition as of October 19, 2014, following the addition of a new ADHD medication, Concerta, to K.R.'s treatment regimen in July 2014. (Tr. 28). In making his finding of medical improvement, the ALJ noted that treatment records dating back to February 2013 reported K.R. was doing well with intensive therapy (Tr. 1287) and a psychological evaluation dated May 2013 reported improvement in certain areas (Tr. 1340-41). (Tr. 29-30). The ALJ relied on school records from September 2014 (Tr. 464-86) and Dr. Weatherington's treatment notes from office visits on October 18, 2014 (Tr. 1433-34) and November 22, 2014 (Tr. 1430-31) to find that medical improvement had occurred and K.R. was no longer disabled as of October 19, 2014. (Tr. 28-30). The ALJ considered and gave "little weight" to Dr. Weatherington's January 2015 report finding marked limitation in the domain of acquiring and using information, marked limitation in the domain of interacting and relating with others, and extreme limitation in the domain of attending

8

and completing tasks. (Tr. 30, citing Tr. 1450-52). The ALJ noted that it was the only opinion rendered after the closed period of disability but found the opinion was inconsistent with the record after the closed period consisting of: (1) Dr. Weatherington's own treatment notes, which the ALJ found reflected improvement in K.R.'s functioning beginning in July 2014 and culminating in Dr. Weatherington's observations in October and November of 2014; and (2) K.R.'s September 2014 school records, which the ALJ found did not comport with Dr. Weatherington's "extreme assessment." (Tr. 30).

Plaintiff argues that the ALJ's finding of medical improvement in K.R.'s functioning after October 18, 2014 is not substantially supported by the record. (Doc. 10 at 9-10). Plaintiff alleges that the ALJ could not reasonably rely on Dr. Weatherington's report of "some improvement" on that date to find that K.R.'s disability had ended because (1) Dr. Weatherington increased K.R.'s medication dosage on October 18, 2014 and considered adding more medication to his treatment regimen, which is not consistent with improvement in K.R.'s medical condition (Tr. 1434), and (2) although Dr. Weatherington noted some improvement in certain areas, he also reported continuing problems and planned to increase K.R.'s medication dosage and possibly add a new medication to K.R.'s treatment regimen at his office visit the following month (Tr. 1431). (Doc. 10 at 9).

Plaintiff further argues that the ALJ improperly engaged in a selective review of the record when citing portions of K.R.'s September 2014 Individualized Education Plan (IEP) that the ALJ found showed medical improvement. (*Id.* at 9-10, citing Tr. 30; *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002)). Plaintiff contends that the IEP contains information showing that K.R. was experiencing continuing issues with functioning. (*Id.*, citing

9

Tr. 467). In addition, plaintiff states that despite the ALJ's finding that K.R. was doing well with intensive therapy as early as February 2013, a finding of sustained functioning is belied by evidence showing that K.R. subsequently presented to the emergency room at Children's Hospital Medical Center (CHMC) in October 2013 with his mother and a police officer. (*Id.* at 10, citing Tr. 1351). Plaintiff suggests this evidence shows that K.R. has had only "periodic" improvement in his functioning and he continues to require "intensive therapy and medication management." (*Id.*).

Plaintiff further alleges that in finding medical improvement, the ALJ improperly gave "little weight" to the opinion of K.R.'s treating physician, Dr. Weatherington, finding marked impairments in acquiring and using information and in interacting and relating with others and an extreme limitation in attending and completing tasks. (*Id.* at 10-11, citing Tr. 1451). Plaintiff argues that the ALJ's finding is not supported by the record after the closed period, which includes only one office visit with Dr. Weatherington at which K.R.'s medication dosage was increased and an assessment by Dr. Weatherington which documents an additional increase in dosage. (*Id.* at 11, citing Tr. 1431, 1445, 1450).

The Commissioner argues in response that the ALJ reasonably found that K.R.'s condition medically improved as of October 19, 2014, coinciding with his use of Concerta starting in July 2014. (Doc. 15 at 6-7, citing Tr. 28, 1447). The Commissioner argues that the ALJ need not address every finding in the record and did not err by engaging in a "selective" review of the record. (*Id.* at 7, citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)). The Commissioner contends the ALJ relied on substantial evidence which included K.R.'s school records and the reports of his treating physician, Dr. Weatherington, to

10

find medical improvement. (*Id*. at 7, 8, citing Tr. 466, 468, 1430, 1433-34). The Commissioner further argues that the ALJ reasonably determined that Dr. Weatherington's January 2015 assessment was inconsistent with the evidence, including his own treatment notes from October and November of 2014 and the school records. (Doc. 15 at 9-11, citing Tr. 1450-51).

In reply, plaintiff argues that the Commissioner has ignored evidence that is inconsistent with the ALJ's finding of medical improvement, including findings in the September 2014 IEP detailing ongoing issues and findings by Dr. Weatherington. (Doc. 16 at 2, citing Tr. 477, 1431-34). Plaintiff alleges that Dr. Weatherington's treatment notes from October and November 2014 indicate that K.R. had made some improvements, including in the areas of attention and focus, but they also document continued issues with aggressive behavior. (*Id*.). Plaintiff further contends that the ALJ unreasonably assumed the alleged improvement in K.R.'s condition was sustained and erroneously failed to consider whether K.R.'s impairments are subject to temporary remission. (*Id*. at 2, citing POMS DI 28010.115(B)). Plaintiff argues that because K.R.'s severe issues date back to at least November 2011 and the alleged improvement lasted less than three months (from October 18, 2014 to the date of Dr. Weatherington's January 5, 2015 RFC assessment), "it is unreasonable to assert that the supposed improvement lasted long enough to have a significant impact on [K.R.'s] functioning under ordinary conditions on a sustained basis." (*Id*. at 3).

### a. Medical evidence

The medical evidence on which the ALJ relied to find medical improvement consists in large part of the treatment notes of Dr. Weatherington, K.R.'s most recent treating physician. Dr. Weatherington first saw K.R. on July 24, 2014. (Tr. 1445-47). Dr. Weatherington reported that

K.R. had a "[v]ery complicated blend of multiple [diagnoses] that are creating an academic and behavioral liability for him," he had been hospitalized twice for suicidal ideation, and he had been on multiple medications previously "without much success." (Tr. 1445). Dr. Weatherington noted problems both academically and behaviorally at school. (*Id.*). He decided to begin trial courses of Concerta and Tenex for tic control, both of which would have to be titrated slowly to a higher dose. (Tr. 1446-47). Dr. Weatherington recommended counseling, a medication recheck in three to five weeks, and follow-up in three months or sooner if K.R. was not improving. (Tr. 1446).

Treatment notes dated August 27, 2014 state that it was reported K.R. had started at a new school eight days earlier, he had not made friends yet, an IEP had not been implemented yet, there had been no school complaints, and there were some behavior issues at home and some concerns over mood issues. (Tr. 1439).

K.R. was seen again on September 24, 2014. (Tr. 1436-1438). Dr. Weatherington reported that K.R. was making some progress on his ADHD symptoms but they were "still problematic"; his tics and behavior were improving on Tenex; and he was having "lots of trouble sleeping, staying asleep and bad dreams." (Tr. 1437). The plan was to increase Concerta slowly to 36 mg at that point while acknowledging that a further increase to 45 or 54 mg would likely be needed; keep the Tenex at ½ mg "BID" (two times a day) but consider increasing the dose if K.R.'s tics increased with Concerta; add Melatonin 3 mg at night; possibly consider adding Clonidine or Trazodone; and follow up in three to four weeks or sooner if K.R. was not improving. (Tr. 1437-38).

12

Dr. Weatherington next saw K.R. approximately three weeks later on October 18, 2014. (Tr. 1433-35). Dr. Weatherington reported overall there was "[s]ome improvement," but K.R. was "[s]till failing mostly due to homework." (Tr. 1433). K.R. reportedly was not sleeping well. (*Id.*). His medications included Melatonin 3 mg, Concerta tablet extended release 24 hour, 36 mg, and 1 mg Guanfacine. (Tr. 1434). The plan was to continue with Concerta, which was noted to wear off in the evening, increase Tenex to twice a day, and continue Melatonin. (*Id.*). Dr. Weatherington reported that K.R. may need Clonidine added to his regimen and the plan was to follow-up in three months or sooner if K.R. was not improving. (Tr. 1434).

Dr. Weatherington saw K.R. less than five weeks later on November 22, 2014. (Tr. 1430-32). The report notes that K.R. was overall doing "better in school" and "with paying attention." (Tr. 1430). Dr. Weatherington assessed K.R. as "[d]oing some better with attention and focus" and "[s]till aggressive and abrupt with behaviors." (Tr. 1431). The plan was to increase K.R.'s medication doses for a trial period, increasing the Concerta dose to 45 mg and Tenex to 1.5 mg twice a day. (*Id.*). Dr. Weatherington noted he had discussed the possibility of adding Seroquel or "other atypical" medication. (*Id.*). The plan was to follow up in one to two months or sooner if K.R. was not improving. (*Id.*).

Dr. Weatherington completed a Mental Impairment Questionnaire on January 5, 2015, in which he reported that he had been seeing K.R. at least monthly since July 2014. (Tr. 1450-1452). He listed K.R.'s diagnoses as ADHD, ODD, PTSD (post-traumatic stress disorder) rule/out, enuresis, Tourette's, anxiety disorder, and blood pressure disorder. (Tr. 1450). Dr. Weatherington noted that K.R. had been treated with multiple medication trials with variable responses and was currently on Concerta 54 mg and Tenex 1.0 twice a day. (*Id.*). He reported

that K.R. had "[s]ignificant difficulty with executive function esp [especially] attention/focus [and] impulse control" and "difficulties with mood modulation and behavior esp [especially] when frustrated, challenged or pressured." (*Id.*). He reported that K.R. possibly has reduced intellectual functioning based on Wechsler IQ test results but urged that the results be interpreted with caution due to K.R.'s testing limitations. (Tr. 1451). Dr. Weatherington opined that K.R. had the following level of impairment in the six domains of functioning:

| | |
|---|---|
| Acquiring and Using Information: | Marked |
| Attending to and Completing Tasks: | Extreme |
| Interacting and Relating with Others: | Marked |
| Moving About and Manipulating Objects: | No Limitation |
| Caring for Self: | Less than Marked |
| Health and Physical Well-Being: | No Limitation |

(Tr. 1451).

**b. Educational records**

The educational records on which the ALJ relied to find medical improvement consist primarily of K.R.'s September 2014 IEP for sixth grade at a new school. The "Profile" section of the IEP described K.R. as an "active and friendly 6th grade student"; "very social and enjoys being with his friends at school"; "tends to be impulsive, but he responds well to positive redirection, well defined structured learning environments, and well defined behavioral limits"; and wishes "to please his teacher" and "enjoys sharing with his teachers and friends." (Tr. 466). The IEP also noted that he "tends to seek teacher attention" and "tends to be emotional at times [but] has demonstrated that he can rebound when he is upset, and is able to refocus on learning."

14

(*Id.*).  The IEP noted that frequent breaks help him stay engaged in learning; he tends to become easily frustrated if he is unable to understand a new process or information immediately; he does not fully understand that new skills need to be practiced and wants to learn skills instantly; he is able to master most new skills at the expected rate when he slows down but does not retain these skills without continuous review; he often rushes through his work, resists having test questions read aloud to him, and does not listen closely when test questions are read to him; and his resistance causes him to incorrectly interpret questions and make mistakes.  (*Id.*).  It was also noted that he demonstrates improved comprehension and problem solving skills when he accepts support services and he benefits from having directions reread to him and explained and from having tests read to him in a small group away from distractions.  (*Id.*).

The Educational Team Report for September 2014 (ETR) reported that testing results from the 2013-2014 school year placed K.R. within the low range compared to his same age peers.  (Tr. 467-68).  He had difficulty identifying and explaining cause and effect relationships, making inferences, and determining the meaning of unknown words.  He had significant difficulty composing single, two-part and four-part written responses to questions about text he has read.  His responses are not written in complete sentences, are partially accurate, or are not accurate.  He has the ability to learn and apply grade level reading skills but is very impulsive and has extreme difficulty attending to the task of reading or completing written work.  His inability to maintain focused attention likely impacts his ability to fully concentrate long enough to compose and complete accurate written responses to selections he has read.  With one-on-one teacher assistance to focus his attention on writing and other assistance, he can write a topic focused paragraph.  He needs direct teacher prompting to complete a single topic focused

15

paragraph. He continues to struggle with sentence structure and basic application and punctuation. Although he knows the rules of general capitalization and punctuation, he works very rapidly and does not pay attention to the details of correctly using capitalization and punctuation.

The ETR also reported that K.R. has the ability to learn grade level math skills but he does not consistently retain previously learned skills. He struggles when applying skills related to fractions, decimals and percentages and has difficulty solving word problems. He is very impulsive and has extreme difficulty attending to instruction in large and small groups. His inability to maintain focused attention impacts his ability to fully concentrate during instruction and when completing his math work. Although he shows a marked improvement in his math skills since his November 29, 2011 ETR, he is struggling to master the process for using the standard addition, subtraction, multiplication and division algorithms.

In the behavior category, it was noted that K.R. is impulsive and has extreme difficulty attending to instruction in large and small groups. He does not focus his attention on the teacher during class time. He blurts out during class times, test time, and large and small group instruction. He is asked to sit in a remote part of the classroom to limit his distraction. He gets up from his seat and wanders around the classroom. He has been observed pushing and shoving the table and chairs when frustrated and had been involved in a physical altercation with a classmate. He is given frequent breaks to help him focus when seated during class time.

The ETR noted continuity with the prior ETR dated December 9, 2011, which stated K.R. had significant difficulties focusing his attention on learning. The 2014 ETR also noted that the information from the prior ETR is evidenced several times in the current ETR, which states that

16

K.R. requires continuous prompting from adults in order to maintain on task behavior and that this information remains consistent with current data pertaining to K.R.'s ability to focus and maintain his attention.

### c. The ALJ's finding of medical improvement is not substantially supported

Plaintiff argues that the ALJ's finding of medical improvement is not substantially supported because (1) the ALJ selectively cited to evidence in the record to find improvement in K.R.'s condition, (2) the ALJ erroneously failed to consider whether any improvement in K.R.'s condition was temporary, and (3) the ALJ erroneously failed to give Dr. Weatherington's January 2015 opinion of disabling impairments controlling weight. A review of the evidence of record shows that the ALJ erroneously relied on select portions of the record that demonstrated "some" improvement in K.R.'s condition, failed to consider other evidence that showed little to no change in his symptoms, and did not properly weigh the treating physician's opinion that assessed disabling limitations. The fact that K.R. may have experienced "some" improvement is not sufficient for purposes of the ALJ's medical improvement analysis. "[W]hat matters for the purposes of [K.R.'s] functional limitation determination is [K.R.'s] overall state, not the mere fact that treatment was helping." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 325-26 (6th Cir. 2015). Here the record does not support a finding that the level of improvement was sufficient to support the ALJ's finding of medical improvement as of October 19, 2014.

The ALJ traced evidence of improvement in K.R's condition to a February 12, 2013 report from CHMC that K.R. "was doing well with intensive therapy" and to a CDC Mental Health Services (CDC) psychological evaluation report, which the ALJ mistakenly indicated had

been performed in May of 2013.[5]  (Tr. 29-30, citing Tr. 1287, 1340-41).  The February 2013

treatment record, which documents a routine office visit for the follow-up of hypertension,

reports that K.R. "is not on ADHD [medications] and is doing well with intensive therapy."  (Tr.

1287).  The ALJ stated that the September/October 2013 psychological evaluation included

reports that K.R. was satisfied with his friendships, which included a "very close friend and

several casual friends"; he was "spending free time outside playing sports and video games,

doing arts and crafts, and being outside"; and "his mother also acknowledged he made friends

easily and was interested in doing what other children do."  (Tr. 29-30, citing Tr. 1340, 1341).

The ALJ's reliance on this evidence to show that K.R.'s condition was starting to improve well

before October 2014 is inconsistent with other findings the ALJ made and with the

overwhelming evidence of record.

First, the ALJ relied on the same CDC psychological evaluation he cited to show

improvement in K.R.'s condition to also demonstrate that K.R. had "continued struggles with

behavioral issues" and was disabled during the closed period.[6]  (Tr. 26, citing Tr. 1339-42).

The ALJ stated that K.R. presented as "hyperactive and distracted" during the evaluation (Tr.

1340); his teachers reported he was struggling to work up to his potential and had not learned

much due to his sadness and anxiety (Tr. 1341); he reportedly was "'very sociable' but bullied

frequently" and had difficulty fitting in with others (*Id.*); and he was described as defiant and

destructive at home and physically destructive toward family members (Tr. 1342.).  (Tr. 26).

---

[5] The report is dated November 26, 2013 and lists the dates the evaluation was performed as September 17, 2013 and October 14, 2013.  (Tr. 1339).

[6] The ALJ apparently did not realize the evaluation, which he noted was performed in September 2013, was the same evaluation he mistakenly referenced as having been performed in May 2013.

The ALJ also noted that K.R.'s diagnoses as listed in the report included bipolar disorder NOS, anxiety disorder NOS, PTSD NOS, ADHD, and ODD with a GAF of 51.[7] (*Id.*, citing Tr. 1346). The ALJ did not explain how these negative findings from the evaluation, which document continued issues with interacting and relating with others, are consistent with the subjective reports of K.R. and his mother from the same evaluation which the ALJ cited as evidence of improvement in K.R.'s condition. (Tr. 29-30, citing Tr. 1340, 1341). The ALJ's reliance on a select portion of the evaluation to show improvement in K.R.'s condition during the closed period of disability is inconsistent with the ALJ's own review of the evidence, which shows K.R.'s "continued struggles with behavior issues" and difficulty getting along with others during this time period. (Tr. 26). The ALJ erred by relying on a "skewed depiction" of the evidence that "improperly disregards significant portions of the specific medical notes from which these phrases were excerpted." *Winn*, 615 F. App'x at 322. When the treatment notes are viewed in their entirety, they clearly indicate that K.R. continued to suffer from debilitating symptoms. The ALJ erred by failing to consider the treatment notes as a whole. *Id.* (citing *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) ("[F]ailure to consider the record as a whole undermines the Secretary's conclusion."); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980) ("Substantiality of the evidence must be based upon the record taken as a whole.")).

 Other evidence that the ALJ relied on to find disability during the closed period is not

---

[7] The GAF scale rates an individual's "overall psychological functioning" from 0 to 100 and is meant to reflect an individual's "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at 34. An individual with a score of 51-60 is classified as having "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning." *Id.*

consistent with a finding that K.R. was showing improvement as early as February 2013. This evidence includes a September 13, 2013 CHMC treatment record that noted K.R. had difficulty getting along with his family, he was aggressive towards his brother, and he had difficulty with other children in school. (Tr. 26, citing Tr. 1305). The ALJ also relied on hospital records from October 2013 relating to K.R.'s treatment after he was brought to the hospital by his mother and a police officer for disruptive behavior. (*Id.*, citing Tr. 1351). The ALJ noted that the police were called after K.R. was fighting with his mother and that his GAF was 40 at the time.[8] (*Id.*, citing Tr. 1360). Finally, the ALJ noted that a CDC evaluation performed in March 2014 indicated "significant symptoms of ADHD and affective dysregulation." (*Id.*, citing Tr. 1383).

It was not reasonable for the ALJ to rely on the above evidence to find disability and to also rely on isolated portions of the record from the same time frame to find that K.R. had started improving well before October 2014. To the contrary, the medical evidence subsequent to the February 2013 report documents K.R.'s need for a physician's care and the use of new medications in increasing doses to control his "[v]ery complicated blend of multiple DX [diagnoses] that are creating an academic and behavioral liability for him," including ADHD, as described by Dr. Weatherington in his notes of K.R.'s initial visit in July 2014. (Tr. 1445). The evidence considered as a whole does not document improvement in K.R.'s condition prior to the date of that initial visit. *Winn*, 615 F. App'x at 322; *Allen*, 613 F.2d at 145.

The ALJ also relied on K.R.'s IEP from September 2014 to find medical improvement as of October 19, 2014. The ALJ relied on statements in K.R.'s September 2014 IEP that K.R. is

---

[8] The DSM-IV categorizes individuals with GAF scores of 31 to 40 as having "some impairment in reality testing, or impairment in speech and communication, or serious impairment in several of the following: occupational or school functioning, interpersonal relationships, judgment, thinking or mood." *Id*. at 32.

"an active and friendly 6th grade student" who "is very social and enjoys being with his friends at school"; he wants to "please his teachers and enjoyed sharing with his teachers and friends"; he tends to be emotional at times but has demonstrated during the sixth grade school year that "he can rebound when he is upset, and is able to refocus on learning"; when he "accepts support services, he demonstrates improved comprehension and problem solving skills"; and although he "tended to be impulsive, his teachers observed he responded well to positive redirection, well-defined structured learning environments, and well-defined behavioral limits." (Tr. 28, 30, citing Tr. 466). However, the ALJ ignored other statements in the report that document continuing behavioral issues, significant attention and concentration issues, and significant learning difficulties. The IEP expressly documented these continued attention issues:

> [K.R.'s] ETR (Educational Team Report) dated 12/9/11 states that [K.R.] had significant difficulties focusing his attention on learning. This information is evidenced several times in the ETR. The ETR states that [K.R.] required continuous prompting from adults in order [] to maintain on task behavior. This information remains consistent with current data pertaining to [K.R.'s] ability to focus and maintain hi[s] attention.

(Tr. 468). The ALJ relied on the findings from the prior ETR to find K.R. was disabled (Tr. 26-27, citing Tr. 1046, 1112, 1129), but he inexplicably relied on a subsequent IEP which incorporated those same findings to find K.R.'s disability had ceased.

The ALJ failed to address other significant portions of the IEP that document continuing difficulties. The ALJ did not acknowledge statements in the IEP that frequent breaks help K.R. stay engaged in learning; he tends to become easily frustrated if he is unable to understand a new process or information immediately; he does not fully understand that new skills need to be practiced and wants to learn skills instantly; he is able to master most new skills at the expected rate when he slows down but does not retain these skills without continuous review; he often

21

rushes through his work, resists having test questions read aloud to him, and does not listen

closely when test questions are read to him; and his resistance causes him to incorrectly interpret

questions and make mistakes.  (Tr. 467-68).  The ALJ noted that K.R. demonstrates improved

comprehension and problem solving skills when he accepts support services, but he did not

mention that K.R. benefits from having directions reread to him and explained and from having

tests read to him in a small group away from distractions.  (*Id.*).

Nor did the ALJ acknowledge that the observations in the report related to continued

behavior and attention problems and the difficulties these issues posed for him in a classroom

setting.  In addition to the difficulties previously noted, the report noted that K.R. is impulsive

and has extreme difficulty attending to instruction in large and small groups; he does not focus

his attention on the teacher during class time; he blurts out during class times, test time, and large

and small group instruction; he is asked to sit in a remote part of the classroom to limit his

distraction; he gets up from his seat and wanders around the classroom; he has been observed

pushing and shoving the table and chairs when frustrated and had been involved in a physical

altercation with a classmate; and he is given frequent breaks to help him focus when seated

during class time.  (Tr. 468).

In light of the continuing attention and concentration and other issues documented in the

September 2014 IEP, it was incumbent on the ALJ to address the IEP as a whole and explain

how it demonstrated medical improvement.  Instead, the ALJ relied on select statements from the

IEP that appear to show K.R. had made some progress and disregarded the rest of the report.

This was error.  *Winn*, 615 F. App'x at 322.  Viewed in its entirety, the September 2014 EIP

indicates that K.R. continued to suffer from disabling symptoms.

In addition, the ALJ erred by relying on Dr. Weatherington's treatment notes for the period October through November of 2014 to find that K.R.'s disability had ceased. The ALJ found that treatment records documented improvement in K.R.'s condition coinciding with his use of a new prescription medication, Concerta, in July 2014. (Tr. 28). The ALJ found that by October 18, 2014, K.R. had shown "some improvement." (Tr. 28, 30, citing Tr. 1433-34). However, "[n]othing in the notes cited by the ALJ supports the conclusion that [K.R.'s] degree of improvement from [his] previous baseline" meant improved functioning to the point that he was no longer disabled. *See Winn*, 615 F. App'x at 326 (citing *Boulis-Gasche v. Comm'r. of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011) ("The ALJ made no inquiry into the degree of improvement, or from what baseline Plaintiff had improved.").

First, Dr. Weatherington's treatment notes from October 18, 2014 are insufficient to support a finding of medical improvement. The notes list under "Chief Complaint": "Some improvement" and "Still failing mostly due to homework." (Tr. 1433). The following findings are made under the review of systems:

> **Constitutional**: Reports not sleeping well.
> **Cardiovascular**: Denies palpitations, chest pain.
> **ADD/ADHD**: Denies Academics going well, Attention & focus good, Homework going well, Behavior good at school, Behavior good at home.
> **Psychiatric**: Reports Flat affect/restriction of emotions, Improvement in ability to sustain attention.

(Tr. 1433). The ALJ interpreted the treatment notes as reporting that K.R. "was still not succeeding academically because of issues with homework" and he "was behaving well at home and school, and demonstrating improved ability to sustain attention." (Tr. 28, citing Tr. 1433-34). However, it appears from the notes that K.R. or his parent *denied* that his academics and homework were going well, that behavior at school and at home were good, that attention and

focus were good, and that he had an improved ability to sustain attention. (*Id*.). This interpretation is consistent with Dr. Weatherington's assessment of K.R. as "overall having some improvement in behavior but still failing and having behavior problems." (Tr. 1434). It is also consistent with Dr. Weatherington's plan to increase K.R.'s Tenex dose and possibly add Clonidine to the regimen. (*Id*.). At best, the treatment notes are unclear with respect to the subjective reports of symptoms and, when construed as a whole, are not sufficient to support the ALJ's finding of medical improvement. *See Winn*, 615 F. App'x at 323 (citing *Boulis-Gasche*, 451 F. App'x at 494) ("The ALJ made no inquiry into the degree of improvement, or from what baseline Plaintiff had improved. Under the ALJ's logic, any improvement in one's mood, regardless of how small and from what level the individual improved, would defeat a claim of mental impairment. This cannot be so.").

Further, Dr. Weatherington's subsequent treatment notes do not appear to support a finding of medical improvement. Although the plan in October was to follow up in three months or sooner if K.R. was not improving (Tr. 1435), Dr. Weatherington saw K.R. less than five weeks later on November 22, 2014. (Tr. 1430-32). Dr. Weatherington assessed K.R. as "[d]oing some better with attention and focus" and "[s]till aggressive and abrupt with behaviors." (Tr. 1431). The plan was to increase K.R.'s medication doses for a trial period, and he discussed the possibility of adding Seroquel or "other atypical" medication to treat K.R.'s continued symptoms. (*Id*.). While the ALJ noted that K.R.'s behavior was still "aggressive and abrupt," he noted that K.R. was reportedly doing well with academics and homework, he was doing well with his behavior at school and at home, there had been a decrease in disruptive behavior, no sleep issues were reported, and he had improved ability to sustain attention. (Tr. 28, citing Tr.

1430-31). The ALJ relied on the reports of improvement in K.R.'s school performance, attention and focus, and behavior at home and school to find that his condition improved as of October 19, 2014, and he no longer functionally met the Listings. (Tr. 29-30). As with the October treatment notes, however, the ALJ did not address the degree of improvement or attempt to reconcile the plan to increase K.R.'s medications with the finding of medical improvement. This was error. *See Winn*, 615 F. App'x at 323.

Finally, the ALJ failed to properly weigh Dr. Weatherington's January 5, 2015 opinion, which assessed K.R. as having marked limitation in acquiring and using information, marked limitation in interacting and relating with others, and extreme limitation in attending to and completing tasks. (Tr. 1450-52). The ALJ gave the opinion "little weight" on the ground it was inconsistent with the record after the closed period, which consisted of Dr. Weatherington's own treatment notes. (Tr. 30). For the reasons discussed above, Dr. Weatherington's opinion appears to be consistent with his treatment records, which document continuing issues, and with K.R.'s need for higher doses of ADHD and other medications between the date of K.R.'s initial visit in July 2014 and his assessment in January 2015. (*See* Tr. 1430-32, 1445-47, 1450-52). Further, Dr. Weatherington's opinion appears to be consistent with K.R.'s September 2014 IEP, which documents continuing problems in several domains of functioning. (*See* Tr. 467-68). The ALJ has not provided "good reasons" for discounting the opinion of Dr. Weatherington, the only source who provided an opinion after the closed period. *Wilson*, 378 F.3d at 545.

Thus, the record substantiates that K.R. continued to experience disabling symptoms after the closed period of disability. In light of the September 2014 IEP, Dr. Weatherington's treatment records, and the adjustments to K.R.'s medications, the ALJ's determination that

K.R.'s impairments had improved to the point that they were no longer disabling is not substantially supported by the record. Although Dr. Weatherington noted "some" improvement, the degree of improvement is unclear. Plaintiff's first and second assignments of error should be sustained.

### 2. "Less than marked" limitation in the domain of "Caring for Self"

Plaintiff argues that the ALJ erred by finding "less than marked" limitation in the domain of "Caring for Self." (Doc. 10 at 12). Plaintiff alleges the record is "replete with evidence of self-abusive behaviors, aggressive behaviors, suicidal ideation, hitting himself and others, anger outbursts, and low frustration tolerance" as demonstrated by records spanning the time period from September 2010 to December 2013 (Tr. 552, 555, 578, 609, 659, 958, 966, 1157, 1208-73, 1328, 1343, 1351-61, 1363, 1376); impulse problems at school and home as shown by records for the period August 2011 to February 2014 (Tr. 324, 429-50, 1067, 1090); and the need to have an adult "constantly cueing him" and for one-on-one instruction due to an inability to work independently in the school setting, and problems properly addressing his emotional needs as reported by teachers and administrators, as shown by records for the period November 2011 to February 2014 (Tr. 357, 342, 350, 355, 432, 276). (Doc. 10 at 12).

The Commissioner argues in response that that ALJ largely considered the evidence that plaintiff cites to challenge the ALJ's finding of "less than marked" limitation in the domain of "Caring for Self." (Doc. 15 at 11-12, citing Tr. 35). However, the Commissioner contends that the ALJ also considered evidence that documents the degree of limitation assessed by the ALJ and that substantial evidence supports the ALJ's finding. (*Id.*). The Commissioner alleges that the evidence plaintiff cites which predates October 19, 2014 would not impact the ALJ's

26

disability finding for the closed period from June 28, 2012 through October 18, 2014. (*Id*. at 11, n. 3). The Commissioner also notes that Dr. Weatherington found less than marked limitation in this domain. (*Id*., n. 4, citing Tr. 1451).

In reply, plaintiff alleges that the examples defendant cites to show K.R. had less than marked limitation in the domain of "Caring for Self," including no difficulty eating on his own, bathing, dressing himself, or getting ready for school with the exception of having to be reminded to brush his teeth, are not requirements of the domain. (Doc. 16 at 3). Instead, plaintiff asserts K.R. exhibited behaviors which the SSA has cited as evidence of limited functioning in this domain, including engaging in "self-injurious behavior" or ignoring "safety rules." (Doc. 16 at 3, citing Doc. 10, Statement of Errors, pp. 11-12). Plaintiff contends the record sufficiently established that K.R. is unable to "adequately regulate his feelings and significantly lacks self-control which leads to placing himself in unsafe situations." (*Id*. at 3).

The evidence plaintiff has cited to show the ALJ erred by finding K.R. has "less than marked" limitation in the area of "Caring for Self" dates from before or during the closed period of disability. (Doc. 10 at 11-12). Insofar as the ALJ's finding was erroneous, plaintiff has not explained how the error was harmful since the ALJ awarded benefits for the closed period. Nor has plaintiff pointed to any evidence that postdates October 19, 2014 to show that K.R. had "more than marked" limitation in this domain of functioning. To the contrary, Dr. Weatherington, the only source to render an opinion on K.R.'s functioning after the closed period of disability, opined that K.R. has "less than marked" limitation in the domain of "Caring for Self." (Tr. 1451).

Plaintiff's third assignment of error should be overruled.

27

### 3. Listing 112.11 for ADHD

Plaintiff contends that the ALJ erred in finding K.R. did not meet Listing 112.11 for

ADHD.  *See* 20 C.F.R. Pt. 404, Subpart P, Appendix 1.[9]  Plaintiff alleges that medical and

educational records for the time period February 2010 through May 2014 show K.R. displayed

symptoms of marked inattention, impulsiveness and hyperactivity.  (Doc. 10 at 12, citing Tr. 277,

283, 324, 337, 342, 357, 365, 371, 419, 431, 432, 454, 468, 489, 494, 532, 659, 1306, 1315,

1328, 1340, 1344).  Plaintiff contends that, "More specifically, Conners 3 Behavior Rating

Scales administered in May of 2012 and September/October of 2013 evidenced very significant

scores in all related areas. . . ."  (*Id.* at 12-13, citing Tr. 342, 1344).  Plaintiff contends the ALJ

made contradictory findings by determining that K.R. had "marked limitations in the areas of

attending and completing tasks, acquiring and using information, and interacting and relating

with others," but finding K.R. does not meet Listing 112.11 for ADHD because there is "no

evidence of marked inattention, marked impulsiveness, and marked hyperactivity along with

additional marked impairments in cognitive/communicative function, social functioning,

personal functioning, or maintaining concentration, persistence or pace."  (*Id.*, citing Tr. 24).

Plaintiff concludes that even if the ALJ found no evidence of symptoms required to meet the

---

[9] The SSA modified the listing criteria for mental disorders in January 2017.  *See Bowman v. Comm'r. of Soc. Sec.*,
No. 16-6298, 2017 WL 1065553, at *3 n. 2 (6th Cir. Mar. 21, 2017). This Report and Recommendation applies the
regulations in effect at the time of plaintiff's claim, under which Listing 112.11 for ADHD is met when there are "A.
Medically documented findings of all three of the following: 1. Marked inattention; and 2. Marked impulsiveness;
and 3. Marked hyperactivity; AND for children (age 3 to attainment of age 18), resulting in at least two of the
appropriate age-group criteria in paragraph B2 of 112.02 . . .   a. Marked impairment in age-appropriate
cognitive/communicative function, documented by medical findings . . . ; or b. Marked impairment in age-
appropriate social functioning, documented by history and medical findings . . . ; or c. Marked impairment in age-
appropriate personal functioning, documented by history and medical findings . . . ; or d. Marked difficulties in
maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Listing, he is obligated to discuss the material evidence and adequately explain the rationale for his finding. (*Id*.).

The Commissioner argues in response that the ALJ did not err by finding K.R. does not meet Listing 112.11 during the relevant period because the ALJ took into account that no treating or examining source indicated that K.R. had an impairment that equaled any listed impairment. (Doc. 15 at 12, citing 20 C.F.R. Pt. 404, Subpart P, Appendix 1; Tr. 23, 29). Defendant notes that the ALJ found K.R. had "marked impairment" in the domains listed by plaintiff *during the period of disability*, which was from June 28, 2012 through October 18, 2014. (*Id*. at 13, citing Tr. 24). The Commissioner argues that whether K.R. met Listing 112.11 prior to October 19, 2014, is not determinative of whether he continued to meet the Listing as of that date. (*Id*.). The Commissioner concedes that while the ALJ could have more fully explained why he found the evidence did not support a finding that K.R. met the requirements of Listing 112.11, his failure was at most harmless error since K.R. was not prejudiced on the merits or deprived of substantial rights. (*Id*., citing *Rabbers*, 582 F.3d at 654).

The evidence plaintiff has cited to show K.R. meets Listing 112.11 is from the closed period of disability. Insofar as the ALJ erred by failing to find K.R. met the Listing during this time period, plaintiff has not explained how the error was harmful since the ALJ awarded benefits for the closed period. Plaintiff has not pointed to any evidence that postdates October 19, 2014 in an attempt to show that K.R. met the Listing for ADHD subsequent to the closed period. Accordingly, plaintiff's fourth assignment of error should be overruled.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter. Nor does the current record adequately establish K.R.'s entitlement to continued benefits beyond the closed period of disability found by the ALJ. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including reevaluation of the opinion of Dr. Weatherington, consideration of K.R.'s educational records as a whole, and reassessment of K.R.'s functional limitations, consistent with this decision.

<b>IT IS THEREFORE RECOMMENDED THAT</b>:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _7/20/17_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

BRANDI ROSS, OBO                              Case No. 1:16-cv-739
K.R., MINOR,                                  Black, J.
      Plaintiff,                          Litkovitz, M.J.


      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).